[Cite as *State v. Long*, 2021-Ohio-2835.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200240 |
| | | TRIAL NO. B-0402803 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JOHN LONG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  August 18, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John W. Long*, pro se.

**MYERS, Presiding Judge**.

{¶1}    Defendant-appellant John Long appeals the Hamilton County Common Pleas Court's judgment denying his Crim.R. 33(B) motion for leave to file a Crim.R. 33(A)(6) motion for a new trial based on newly discovered evidence.  We reverse that judgment, because the record provides clear and convincing proof that Long had, within 120 days of the return of the verdict, been unavoidably prevented from discovering, and from presenting in a new-trial motion, the evidence upon which his proposed new-trial motion depended.

*The Trial*

{¶2}    In 2004, Long was convicted of murder in the stabbing death of Amerrintha Spikes.  Cincinnati Police Officer Thomas Coombs and his partner, responding to an emergency call from Shalese Gilmore, were directed by Gilmore and Petrina Crawford to a warehouse loading dock, where Spikes was found dead of multiple stab wounds.  Gilmore and Crawford told the officer that they had seen a man whom they recognized from the neighborhood, running from the loading dock into a nearby alley.  In that alley, Officer Coombs found a pair of blue jeans shorts.  In the pocket of those shorts was a receipt for a bus ticket issued in the name, "John Long."  The shorts were later collected by another police officer and submitted to the coroner's office for processing.

{¶3}    Forensic analyses of other items found near the crime scene led police to a number of potential suspects who, after further investigation, were cleared.  The name on the bus-ticket receipt found in the pocket of the jeans shorts led police to initially develop as a suspect a man named John E. Long.  The focus turned to the defendant, John W. Long, four months later, when Marlonda Garrett told the lead detective that she had purchased the bus ticket for John W. Long.  Subsequent analysis of biological material found on the jeans shorts showed Spikes's blood on the outside of the shorts and a mixture of DNA on the waistband consistent with that of

2

Spikes and Long. And Long was identified by Petrina Crawford in a photo spread as the man she saw running from the loading dock and by a police officer as the man who had that night, at three separate locations, approached the officer and questioned her extensively about the murder.

{¶4} Shalese Gilmore was listed as a possible trial witness by the state in its response to Long's discovery request, but she was physically unable to appear. Petrina Crawford testified at trial. She stated that she knew Long from the neighborhood, and that while she had earlier seen him wearing dreadlocks, he had appeared that night to be bald or possibly wearing a stocking on his head. She further stated that she had seen him, as he ran from the loading dock into the alley, drop and pick up a red shirt and something that sounded like metal when it hit the ground.

{¶5} Long took the stand in his own defense. He admitted that the jeans shorts were his, but he denied killing Spikes. He stated that he had slept on the loading dock for several days before the murder, and that he had left those shorts there four days earlier.

*Procedural Posture*

{¶6} This court affirmed Long's murder conviction in the direct appeal. *See State v. Long*, 1st Dist. Hamilton No. C-040643 (Oct. 26, 2005), *appeal not accepted*, 108 Ohio St.3d 1489, 2006-Ohio-962, 843 N.E.2d 794; *see also State v. Long*, 1st Dist. Hamilton No. C-100285, 2010-Ohio-6115 (remanding for correction of postrelease control). We also affirmed the denial of postconviction petitions and motions and DNA-testing applications filed between 2010 and 2019. *See State v. Long*, 1st Dist. Hamilton No. C-120521 (Apr. 24, 2013), *appeal not accepted*, 136 Ohio St.3d 1476, 2013-Ohio-3790, 993 N.E.2d 779; *State v. Long*, 1st Dist. Hamilton Nos. C-130566 and C-130605 (June 13, 2014), *appeal not accepted*, 140 Ohio St.3d 1466, 2014-Ohio-4629, 18 N.E.3d 446; *State v. Long*, 1st Dist. Hamilton No. C-

3

140420 (Mar. 20, 2015); *State v. Long*, 1st Dist. Hamilton No. C-180541, 2019-Ohio-4857, *appeal not accepted*, 158 Ohio St.3d 1436, 2020-Ohio-877, 141 N.E.3d 247.

{¶7}    In in 2018, we remanded to the common pleas court for entry of the justiciable-claim finding required for Long to request public records under Ohio's Public Records Act, R.C. 149.43, to support his then-pending 2015 postconviction petition.    *State v. Long*, 1st Dist. Hamilton No. C-170529, 2018-Ohio-4194.    His public-records request was granted in May 2019, when he received his case file.

{¶8}    In August 2019, based on matters disclosed in that case file, Long filed with the common pleas court a postconviction petition, a motion for grand-jury testimony, and a Crim.R. 33(B) motion for leave to file a motion for a new trial.    In September 2019, the common pleas court denied the postconviction petition and the motion for grand-jury testimony, and we affirmed those judgments.    *State v. Long*, 1st Dist. Hamilton No. C-190566, 2020-Ohio-4557, *appeal not accepted*, 161 Ohio St.3d 1408, 2021-Ohio-106, 161 N.E.3d 695.

{¶9}    In June 2020, the common pleas court entered judgment denying Long's 2019 Crim.R. 33(B) motion for leave to file a new-trial motion.    In this appeal, he presents a single assignment of error challenging that judgment.    The challenge is well taken.

*Crim.R. 33(B) Motion for Leave*

{¶10}    In his proposed motion for a new trial, Long sought relief from his murder conviction on the ground that newly discovered evidence demonstrated prosecutorial misconduct in failing to disclose in discovery material, outcome-determinative evidence.    He supported the various aspects of that claim with evidence gleaned from the case file provided in response to his public-records request.

{¶11}    Long offered Officer Coombs's "Police Officer's Notes," in which the officer had left blank the space for noting any evidence "recover[ed]," to show that

4

the officer had perjured himself when he testified at trial that he had found the incriminating jeans shorts in a nearby alley. Long also offered eyewitness Shalese Gilmore's statement to police, along with the summary of her statement provided in the case's "Investigative Log," which, Long insisted, showed that Gilmore had provided a physical description of the suspect that did not match him, and that the lead detective had perjured herself when she testified at trial that "no one ever selected John E. Long out of a photo array." Long offered the lead detective's "Request for Bank Records [of] John E. Long III [in the] Murder of Amerrintha Spikes," which included the lead detective's statement that Gilmore and Crawford had, on the night of the murder, provided a physical description of the suspect that did not match him. He also offered the "Investigative Log," which showed that, four months after Spikes had been killed, the state had been poised to charge John E. Long with her murder. Long further asserted that exculpatory evidence was contained in a Crimestoppers report and subsequent witness statements by a security guard and her boyfriend concerning a bloodied man denied entry to a nearby apartment building shortly after Spikes's murder. Long also asserted that Petrina Crawford's statements to police demonstrated how those statements had "evolved over time * * * to fit what the State needed her to say * * * to secure a conviction." And Long offered statements made to police by eyewitnesses Shalese Gilmore, Ruby Gentry, and Melissa Howell, who had been unable to identify him as the fleeing suspect and had not been called to testify at trial.

### Unavoidable Prevention

{¶12} A new trial may be granted under Crim.R. 33(A)(6) on the ground that "new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at trial." A Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence must be filed

5

either within 120 days of the return of the verdict or within seven days after leave to file a new-trial motion has been granted. Crim.R. 33(B).

{¶13} Crim.R. 33(B) provides that leave to file a Crim.R. 33(A)(6) motion for a new trial based on newly discovered evidence may be granted only upon "clear and convincing proof" that the movant had, within 120 days of the return of the verdict, been "unavoidably prevented" from discovering, and from presenting in a new-trial motion, the evidence upon which his proposed new-trial motion depended. *See State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *State v. Carusone*, 1st Dist. Hamilton No. C-130003, 2013-Ohio-5034, ¶ 32. A claim of unavoidable prevention in filing a Crim.R. 33(A)(6) motion out of time requires proof that, within 120 days of the return of the verdict, the movant did not know that the proposed ground for a new trial existed, and that the movant could not, in the exercise of reasonable diligence, have learned of its existence. *State v. Mathis,* 134 Ohio App.3d 77, 79, 730 N.E.2d 410 (1st Dist.1999), *rev'd in part on other grounds*, *State v. Condon*, 157 Ohio App.3d 26, 2004-Ohio-2031, 808 N.E.2d 912, ¶ 20 (1st Dist.). And any delay in moving for leave after the new-trial ground is discovered must be adequately explained and demonstrated to have been reasonable under the circumstances. *State v. Thomas*, 2017-Ohio-4403, 93 N.E.3d 227, ¶ 9 (1st Dist.). A court's decision on a Crim.R. 33(B) motion for leave may not be overturned on appeal if it was supported by some competent and credible evidence. *Schiebel* at 74; *Mathis* at 79.

{¶14} Long asserted in his motion for leave that he had been unavoidably prevented from discovering the evidence upon which his proposed new-trial motion depended. He pointed out that the R.C. 149.43(A)(2)(c) exception to public-records access had precluded him from gaining access to the records containing that evidence until December 2016, when the Ohio Supreme Court held that that exception does not extend past the completion of the criminal procedure for which

the requested information had been gathered. *See State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 47, overruling in part *State ex rel. Steckman v. Jackson,* 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), and *State ex rel. WLWT–TV5 v. Leis,* 77 Ohio St.3d 357, 673 N.E.2d 1365 (1997). The record on appeal shows that, despite his diligent efforts thereafter to gain access to those records, Long did not receive his case file until May 2019. *See Long*, 1st Dist. Hamilton No. C-170529, 2018-Ohio-4194. In August 2019, he moved under Crim.R. 33(B) for leave to move for a new trial based on evidence contained in that file.

{¶15} Thus, the common pleas court's decision denying Long's motion for leave was not supported by the record. To the contrary, the record provides clear and convincing proof that Long had been unavoidably prevented from timely discovering and presenting in a new-trial motion the evidence upon which his new-trial motion depended, and that under the circumstances, a 90-day delay in filing the motion after that evidence was discovered was understandable and not unreasonable.

*Judgment Reversed and Cause Remanded*

{¶16} Because Long was unavoidably prevented from timely moving for a new trial on the proposed grounds and did not unreasonably delay in moving under Crim.R. 33(B) for leave to file a new-trial motion, we hold that the common pleas court erred in denying leave. Accordingly, we sustain the assignment of error, reverse the judgment denying leave, and remand with instructions to enter judgment granting leave and for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.